**IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF ILLINOIS**

| | | |
|---|---|---|
| Steve Podkulski (B-53394), | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. 17 C 5660 |
| v. | ) | |
| | ) | Hon. Elaine E. Bucklo |
| Tom Dart, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Defendant Reed's motion for summary judgment (Dkt. 212) is granted. The case is dismissed with prejudice as time-barred. Final judgment shall enter.

## BACKGROUND

Plaintiff Steve Podkulski, an Illinois state prisoner currently confined at Lawrence Correctional Center, filed this *pro se*[1] civil rights action pursuant to 42 U.S.C. § 1983 in August 2017 concerning aspects of his incarceration at the Cook County Jail. At this juncture, the only remaining claim before the Court is a retaliation claim against Defendant Officer Reed.[2] Specifically, Plaintiff alleges that Defendant Officer Reed paid an inmate to physically attack him in retaliation for having filed grievances about protective custody inmates not being let out of their cells.

Defendant Reed has moved for summary judgment,[3] Plaintiff responded to Defendant Reed's motion for summary judgment, and Defendant Reed replied. For the reasons discussed

[1] The Court initially recruited counsel for Plaintiff in this matter (*see* Dkts. 5, 15, 33). Counsel was later permitted to withdraw (*see* Dkts. 52, 53).

[2] All claims against Defendants Dart, Yoksoulian, and Paul, were dismissed with prejudice on February 20, 2025. (*See* Dkt. 216.)

[3] Defendant Reed filed his original motion for summary judgment in May 2025 (Dkt. 161). However, the document contained improper citations to the record (a series of indecipherable symbols), and the Court therefore denied the motion without prejudice to re-filing. (*See* Dkt. 210.) Defendant Reed re-filed his motion for summary judgment on February 17, 2026 (Dkt. 212).

below, the Court grants Defendant's motion for summary judgment.

## I. Northern District of Illinois Local Rule 56.1

Local Rule 56.1 governs the procedures for filing and responding to motions for summary judgment in this Court. Rule 56.1 requires the party moving for summary judgment to provide a statement of material facts and a supporting memorandum of law. LR 56.1(a)(1), (2) (N.D. Ill.) (amd. Feb. 18, 2021). The statement of material facts "must consist of concise numbered paragraphs[,]" and "[e]ach asserted fact must be supported by citation to the specific evidentiary material, including the specific page number, that supports it." LR 56.1(d)(1),(2). When addressing facts in its memorandum of law, the moving party "must cite directly to specific paragraphs in the LR 56.1 statements or responses." LR 56.1(g).

The party opposing summary judgment must submit a supporting memorandum of law and a response to the moving party's statement of facts. LR 56.1(b)(1), (2). A fact may be admitted, disputed, or admitted in part and disputed in part. LR 56.1(e)(2). To dispute an asserted fact, the opposing party "must cite specific evidentiary material that controverts the fact" and explain "how the cited material controverts the asserted fact." LR 56.1(e)(3). "[M]ere disagreement with the movant's asserted facts is inadequate[.]" *Smith v. Lamz*, 321 F.3d 680, 683 (7th Cir. 2003). "Asserted facts may be deemed admitted if not controverted with specific citations to evidentiary material." LR 56.1(e)(3).

Here, Defendant Reed filed a Rule 56.1 statement of material facts with his motion for summary judgment. (Dkt. 214.) Defendant Reed does not appear to have served Plaintiff with a Local Rule 56.2 Notice. Nonetheless, any error in failing to do so is harmless, *see Kincaid v. Vail*, 969 F.2d 594, 599 (7th Cir. 1992), given that Plaintiff is a frequent litigator in this Court (such that this is not the first time he has encountered the rules governing summary judgment) and because

he was served with a 56.2 notice in July 2025 in connection with the summary judgment motion filed by Defendants Dart, Paul, and Yoksoulian (*see* Dkt. 194).

In response, Plaintiff submitted a document captioned as a "reply in support of motion for summary judgment" (Dkt. 217), which sets forth three numbered paragraphs explaining why he believes Defendant Reed is not entitled to summary judgment. The document attaches a January 21, 2015, grievance, along with portions of the evidentiary material included with Defendant Reed's motion for summary judgment. (*See id.* at pgs. 3-22.) This is not an appropriate response to Defendant Reed's statement of material facts. As discussed above, Plaintiff was required to submit a statement admitting or disputing each of Defendant Reed's facts. *See* LR 56.1(e)(2). He did not do so.

Although courts construe *pro se* pleadings liberally, *see Thomas v. Williams*, 822 F.3d 378, 385 (7th Cir. 2016), a plaintiff's *pro se* status does not excuse him from complying with federal and local procedural rules. *See McNeil v. United States*, 508 U.S. 106, 113 (1993) ("[W]e have never suggested that procedural rules in ordinary civil litigation should be interpreted so as to excuse mistakes by those who proceed without counsel."); *Collins v. Illinois*, 554 F.3d 693, 697 (7th Cir. 2009) ("[E]ven *pro se* litigants must follow procedural rules."). Local Rule 56.1 "provides the only acceptable means of disputing the other party's facts and of presenting additional facts to the district court." *Midwest Imports, Ltd. v. Coval*, 71 F.3d 1311, 1317 (7th Cir. 1995); *see also Cichon v. Exelon Generation Co.*, 401 F.3d 803, 809-10 (7th Cir. 2005).

Because Plaintiff did not properly respond to Defendant's LR 56.1 statement of facts, the Court accepts Defendant Reed's "uncontroverted version of the facts to the extent that it is supported by evidence in the record." *Keeton v. Morningstar, Inc.*, 667 F.3d 877, 880 (7th Cir. 2012).

The Court turns to the facts of this case, stating those facts as favorably to Plaintiff as the record and LR 56.1 permit. *See Hanners v. Trent*, 674 F.3d 683, 691 (7th Cir. 2012).

## II. Facts

On October 23, 2014, Plaintiff was booked into the Cook County Jail as a pre-trial detainee. (Dkt. 214, Defendant's Statement of Facts, ¶ 1.) Upon booking, Plaintiff was placed into protective custody. (*Id.* at ¶ 2.) On May 11, 2015, Plaintiff was housed on Division 8 Tier 3A. (*Id.* at ¶ 3.) On May 11, 2015, Plaintiff was in protective custody. (*Id.* at ¶ 4.)

### *The May 11, 2015, Inmate Attack*

On May 11, 2015, at approximately 11:00 a.m., Plaintiff was let out of cell for his morning medication. (*Id.* at ¶ 5.) While Plaintiff was out of his cell, detainee Michael Raggs ("Raggs") was also out of his cell, and both were in the dayroom. (*Id.* at ¶ 6.) As Plaintiff walked by Raggs, Raggs punched Plaintiff on the right side of his face. (*Id.* at ¶ 7.) When Plaintiff turned to face Raggs, Raggs fled. (*Id.*) Raggs then grabbed a milk crate and tried to hit Plaintiff's head. (*Id.*) Raggs then grabbed a garbage can and threw it at Plaintiff. (*Id.*) Plaintiff was able to block the milk crate and garbage can with his hands. (*Id.*) After Raggs threw the garbage can at Plaintiff, correctional officers entered the tier and ended the confrontation. (*Id.*) Plaintiff testified that as a result of the altercation, he sustained injuries to his hands and head. (*Id.*)

At the time of the incident, Raggs was approximately 5 feet tall and weighed between 120-130 lbs. (*Id.* at ¶ 8.) Plaintiff was 6-foot, 4-inches tall and weighed approximately 300 lbs. (*Id.*) Reed was not present at the time of the incident. (*Id.* at ¶ 9.) Plaintiff testified that he did not know whether the milk crate cut his hands, and that, at most, any cut was superficial. (*Id.* at ¶ 10.) He further testified that he did not sustain any injury to his hands, except pain, which he rated a 4 on a scale of 1-10 and only lasted a couple of days. (*Id.*)

Plaintiff testified that as a result of being punched, he did not receive any cuts, bruising, damage to his teeth, or a dislocated jaw, and that the only injury he sustained as a result of getting hit in the head was pain, which he rated as a 4 on a scale of 1-10. (*Id.* at ¶ 11.) Plaintiff testified that the garbage can hit him in the upper body, but he did not sustain any injury from it. (*Id.* at ¶ 12.) Plaintiff testified that he did not sustain any injuries from being sprayed with a chemical bottle during the incident. (*Id.* at ¶ 13.)

On May 11, 2015, Plaintiff was seen by Nurse Stephanie Jackson for a post-altercation assessment. (*Id.* at ¶ 14.) Jackson noted some redness and no swelling. (*Id.*) Plaintiff reported no dizziness, no shortness of breath, no nausea, and no vomiting. (*Id.*) Plaintiff refused further treatment/attention at urgent care. (*Id.*) After seeing Jackson on May 11, 2015, Plaintiff did not seek any subsequent medical treatment for his injuries. (*Id.* at ¶ 15.)

***Plaintiff's May 11, 2015, Grievance (Control Number 2015X2465)***[4]

Plaintiff filed a grievance assigned control number 2015X2465, which complains about the May 11, 2015, inmate attack. (Dkt. 214-7, 05/11/15 grievance.) The grievance is dated May 11, 2015. (*Id.*) The grievance complains that Plaintiff was assaulted by Raggs that day, during which time he was punched in the face, had a garbage can thrown at him, and got sprayed in the face with a "chemical bottle." (*Id.*) Reed is not identified by name in the May 11, 2015, grievance. (*Id.*) The grievance makes no allegations that Reed, or any other correctional officer, paid a detainee to attack Plaintiff, nor does it allege "retaliation" on the part of Reed. (*Id.*)

On June 10, 2015, the Cook County Sheriff's Office (CCSO) delivered its response to Plaintiff's May 11, 2015, grievance, indicating that it would review the tier video camera footage and interview the detainees. (Dkt. 214 at ¶ 25.) On June 10, 2015, Plaintiff requested an appeal

[4] The Court notes that the handwriting on this grievance is difficult to read. The Control Number appears to be "**2015X2465**" and the Court will refer to it as such throughout this Order.

of the CCSO's response to his grievance. (*Id.* at ¶ 26.) The "Inmate Request for an Appeal" provides that "[t]o exhaust administrative remedies, appeals must be made within 14-days of the date the inmate received the response." (*Id.* at ¶ 27.)

On June 12, 2015, the CCSO accepted Plaintiff's grievance appeal and instructed Plaintiff to request a complaint register to initiate an investigation by the CCSO's Office of Professional Review. (*Id.* at ¶ 28.) The CCSO's appeal response was delivered to Plaintiff on June 20, 2015. (*Id.*)

***The Grievance Procedures***

At all relevant times, the CCSO had in effect General Order 24.14.5.0 that sets forth the inmate grievance procedure. (*Id.* at ¶ 17.) At all relevant times, the CCSO's Inmate Information Handbook set forth the inmate grievance procedure. (*Id.* at ¶ 18.) The CCSO grievance procedures provide that a prisoner must complete an Inmate Grievance Form within fifteen (15) days of the occurrence of the incident, problem, or event that they are grieving. (*Id.* at ¶ 19.) The CCSO grievance procedures provide that a prisoner will receive a written decision about their grievance and will be required to sign a form indicting receipt thereof. (*Id.* at ¶ 20.) The CCSO grievance procedures also provide that if a prisoner does not agree with the grievance decision, the prisoner will have fourteen (14) days from receipt of the decision to appeal. (*Id.* at ¶ 21.)

***The Instant Lawsuit***

On August 2, 2017, Plaintiff filed his original complaint in this case.[5] (*Id.* at ¶ 29.) Plaintiff's original complaint did not raise allegations related to the May 11, 2015, attack or any allegations against Reed. (*Id.* at ¶¶ 31-32.)

On October 12, 2018, the case was dismissed with prejudice for want of prosecution. (*Id.*

[5] The original complaint was focused on Plaintiff's medical care at the jail. (*See* Dkt. 1.) Upon initial review of Plaintiff's August 2, 2017, complaint, the Court recruited counsel for Plaintiff. (*See* Dkt. 5.)

at ¶ 33.) On September 15, 2020, the Court granted Plaintiff relief from judgment.[6] (*Id.* at ¶ 34.)

On June 26, 2023, Plaintiff filed an amended complaint, which alleged, among other things, that: "when I was violently assaulted Officer Davis allowed this seg inmate out who violently assaulted me. And Officer Reed paid this inmate to assault me. Officer Reed and Officer Davis violated my 8th and 14th Amend [*sic*]." (Dkt. 49, Plaintiff's amended complaint at pg. 2.)

On September 11, 2023, Plaintiff filed an amended complaint, alleging, among other things, that "Officer Reed 3-11 is on camera and in front of witnesses inmates Bowers and Vaughn seen paying the inmate who physically attacked me and telling him good job for getting that P.C. motherfucker." (Dkt. 56, Plaintiff's amended complaint at pg. 10.)

On February 23, 2024, Plaintiff filed another amended complaint, which alleges retaliation on the part of Officer Reed in connection with an inmate attack. (Dkt. 87, Plaintiff's amended complaint at pg. 5.) Count 4 of the February 23, 2024, amended complaint states as follows:

> Officer Reed 3-11 shift is on camera in front of witnesses Bowers and Vaughn paying the inmate who violently physically attacked me. Officer Reed told this person who attacked me 'good job for getting that P.C. motherfucker. Now he will stop complaining filing grievances about P.C. not being let out of th[eir] cells he got what he deserved. This was retaliation act for grievances I had filed about issues in this complaint.

(*Id.*)

***Plaintiff's 2019 Transfer***

On October 5, 2019, Plaintiff was transferred into the custody of the Illinois Department of Corrections (IDOC). (Dkt. 214 at ¶ 43.)

---

[6] In connection with the reinstatement of the case, Plaintiff also moved for, and was granted, the recruitment of new counsel. (*See* Dkts. 31, 32, 43.) In July 2023, recruited counsel filed a status report indicating that "[he] does not believe that representation is possible consistent with counsel's ethical obligations and obligations under the Federal Rules of Civil Procedure." (Dkt. 52.) Based on this representation, the Court permitted recruited counsel to withdraw. (*See* Dkt. 53.)

## III. Summary Judgment Standard

Summary judgment is appropriate when the record, viewed in the light most favorable to the non-moving party, reveals that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Smith v. Hope School*, 560 F.3d 694, 699 (7th Cir. 2009). A genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby*, Inc., 477 U.S. 242, 248 (1986); *see also Insolia v. Philip Morris, Inc.*, 216 F.3d 596, 599 (7th Cir. 2000). In ruling on a motion for summary judgment, the court must consider the record as a whole, in the light most favorable to the non-moving party, and draw all reasonable inferences in favor of the non-moving party. *Anderson*, 477 U.S. at 255.

The party seeking summary judgment has the initial burden of showing that there is no genuine dispute and that it is entitled to judgment as a matter of law. *Carmichael v. Village of Palatine*, 605 F.3d 451, 460 (7th Cir. 2010). If the moving party demonstrates the absence of a disputed issue of material fact, "the burden shifts to the non-moving party to provide evidence of specific facts creating a genuine dispute." *Carroll v. Lynch*, 698 F.3d 561, 564 (7th Cir. 2012). The non-movant must go beyond the pleadings and "set forth specific facts showing there is a genuine issue for trial." *Hannemann v. Southern Door County School Dist.*, 673 F.3d 746, 751 (7th Cir. 2012).

## IV. Discussion

Defendant Reed seeks summary judgment on exhaustion and timeliness grounds. (*See* Dkt. 213 at pgs. 3-7.) He also argues, in the alternative, that "Plaintiff should be barred from seeking compensatory damages for mental or emotional injury because his *de minimis* physical injuries do not satisfy the requirements of the Prison Litigation Reform Act." (*See id.* at pgs. 7-9.)

The Court begins with Defendant's exhaustion argument. The Prison Litigation Reform Act (PLRA), 42 U.S.C. § 1997e(a)–(h), prohibits a prisoner from initiating any action related to prison conditions under § 1983 "until such administrative remedies as are available are exhausted." *Reid v. Balota*, 962 F.3d 325, 329 (7th Cir. 2020) (quoting 42 U.S.C. § 1997e(a)). To satisfy the exhaustion requirement, a prisoner "must take each of the steps prescribed" by the relevant correctional facility's rules governing grievances. *Chambers v. Sood*, 956 F.3d 979, 983 (7th Cir. 2020); *see also Schillinger v. Kiley*, 954 F.3d 990, 995 (7th Cir. 2020); *Lockett v. Bonson*, 937 F.3d 1016, 1025 (7th Cir. 2019).

"Grievances are intended to '[allow prisons] to address [issues] before being subjected to suit, [reduce] litigation to the extent complaints are satisfactorily resolved, and [improve] litigation that does occur by leading to the preparation of a useful record.'" *Maddox v. Love*, 655 F.3d 709, 721 (7th Cir. 2011) (quoting *Jones v. Bock*, 549 U.S. 199, 219 (2007)). Thus, to exhaust, a prisoner must give the prison "notice of, and an opportunity to correct, a problem." *Schillinger*, 954 F.3d at 996 (quoting *Turley v. Rednour*, 729 F.3d 645, 650 (7th Cir. 2013)). At a minimum, a grievance must provide notice to the prison of "the nature of the wrong for which redress is sought." *Id.* at 995 (quoting *Strong v. David*, 297 F.3d 646, 650 (7th Cir. 2002)). Failure to exhaust administrative remedies constitutes an affirmative defense for which Defendant bears the burden of proof. *Id.* Defendant has not met this burden here.

Defendant argues that Plaintiff failed to exhaust his administrative remedies with respect to the retaliation claim at issue in this suit because the May 11, 2015, grievance (Control Number 2015X2465) did not specifically name Reed or specifically allege that Reed paid an inmate to assault Plaintiff. (*See* Dkt. 213 at pg. 3.) According to Defendant, this renders Plaintiff's retaliation claim against him unexhausted. The Court is not persuaded by this argument.

Initially, while the Inmate Handbook sets forth the jail's grievance process, it does *not* include any instruction concerning the specificity of the grievance allegations. (*See* 214-8 at pgs. 5-10.) Further, the May 11, 2015, grievance does not require an inmate to specifically name an individual(s) associated with the grievance; rather, the form simply instructs the inmate to "please include: date of incident[,] time of incident[,] specific location of incident[.]" (Dkt. 214-7.) Also, as a substantive matter, the Court observes that exhaustion is not inadequate under the PLRA merely because "an individual later sued was not named in the grievance[][.]" *See Jones v. Bock*, 549 U.S. 199, 219 (2007).

Moreover, the record is disorganized with respect to *how many* grievances Plaintiff filed in connection with the claim at issue in this suit (and what path each grievance followed).[7] At this juncture, it is clear that Plaintiff filed a number of grievances around the time of the May 11, 2015, Raggs attack, in which he specifically complained about ongoing conflicts or problems with Officer Reed. (*See* Dkts. 217; 220-2; 224.) And, Plaintiff specifically testified at his deposition -- and maintains in his summary judgment response -- that some of his grievances were not processed properly by the jail or went missing (*see e.g.*, Dkt. 214-2 at pg. 134:4-24; 139:15-24; 142:18-19; 148-150; 162:19-24; 163:1-3, 16-24; 164:17-22; Dkt. 217).

[7] This issue was the subject of supplemental briefing. (*See* Dkt. 223, setting supplemental briefing schedule.) On June 15, 2026, Defendant Reed filed a supplemental brief (which attaches over 800 pages of grievance documentation). (*See* Dkt. 224.) Although given an opportunity to respond to Defendant's supplemental brief, Plaintiff did not do so. In his supplemental brief, Defendant doubles down on his argument in the original summary judgment motion, maintaining that the May 11, 2015, grievance (Control Number 2015X2465) is the only/operative grievance for exhaustion purposes. (*Id.* at pgs. 1-2.) Defendant asserts in his supplemental briefing that any additional grievances filed around the time of the Raggs attack (*and which specifically name officer Reed*) are insufficient for exhaustion purposes because "[n]one of these grievances raise the claims of retaliation in Plaintiff's Amended Complaint." (*Id.*) The Court appreciates Defendant's argument and acknowledges that these other grievances, which Defendant summarizes at pages 2 to 3 of the supplemental brief, do not specifically refer to "retaliation" on the part of Defendant Reed in connection with the May 11, 2015, Raggs attack. However, the Court is not inclined to accept such a narrow reading of these other grievances, given the number of the grievances filed, that they were all filed within a few days of each other (and around the time of the Raggs attack), that some seem to cross-reference others, that they chronicle ongoing conflicts/problems with Officer Reed, and that all seem to have received a response from the facility.

On this record, and under the circumstances of this case, the Court cannot find that Defendant Reed is entitled to summary judgment on exhaustion grounds.

However, the Court finds that Defendant Reed is entitled to summary judgment on timeliness grounds. To be sure, the statute of limitations for an action under 42 U.S.C. § 1983 filed in Illinois is two years, *see Johnson v. Rivera*, 272 F.3d 519, 521 (7th Cir. 2001), and it is tolled while a plaintiff is exhausting his claim through the grievance process, *see Turley v. Rednour*, 729 F.3d 645, 651 (7th Cir. 2013) (citing *Johnson v. Rivera*, 272 F.3d 519, 521-22 (7th Cir. 2001)).

As discussed above, the record is disorganized with respect to how many grievances were filed in connection with the claim at issue in this lawsuit (and what happened to each of these grievances). But, regardless, the Court discerns no way in which Plaintiff's claim against Reed -- which pertains to events that occurred in *2015* -- could be timely.

Plaintiff left the Cook County Jail in **2019**. (*See* Dkt. 214 at ¶ 43.) He does not make any argument, nor is there any evidence before this Court, to suggest that he attempted to grieve Reed's conduct related to this lawsuit *after* leaving the Cook County Jail. Thus, even if Plaintiff filed a grievance **as late as 2019** (before he left the Cook County Jail), his claim would still be untimely. By that calculation, he would have had, at the *very* latest, two years from 2019, or until **2021**, to file his claim against Reed. Instead, he filed the amended complaint raising his retaliation claim against Reed **two years after that in 2023**.[8]

Accordingly, the Court finds that Defendant Reed is entitled to summary judgment on timeliness grounds.

Given that Plaintiff's claim is untimely, the Court finds no reason to address Defendant's

[8] Again, the Court reiterates that Plaintiff did not respond to the supplemental briefing.

(alternative) argument concerning compensatory damages.

## V. Conclusion

Defendant Reed's motion for summary judgment (Dkt. 212) is granted. The case is dismissed with prejudice as time-barred. Final judgment shall enter.

Date: August 26, 2026

/s/ Hon. Elaine E. Bucklo
United States District Judge